IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**JOSE MONTALVO FEBUS, et. al.,**

    **Plaintiffs,**

    **v.**                                        **Civil No. 11- 1428 (GAG)**

**RICHARD SANCHEZ, et al.,**

    **Defendants.**

## OPINION AND ORDER

Jose Javier Montalvo Febus ("Plaintiff" or "Plaintiff Montalvo") among others[1] (collectively "Plaintiffs") filed the instant action seeking compensatory damages against Police Officer Richard Sanchez ("Defendant").[2] (Docket No. 1) The action was brought under 42 U.S.C. § 1983 for alleged violations of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff Montalvo alleges violations of his constitutional rights in connection with the investigation and prosecution for the murder of Freddie Laboy-Valentín. Id. Plaintiffs further invoke the court's supplemental jurisdiction for claims arising under Articles 1802 and 1803 of the Puerto Rico Civil Code. P.R. LAWS ANN. tit. 31, § 5141 & 5142. Pending before the court is Defendant's motion for summary judgment seeking dismissal of all claims, or, in the alternative, qualified immunity. (Docket Nos. 46 & 47.) Plaintiffs filed their opposition at Docket Nos. 60 and

---

[1] Plaintiff's wife, Janet Ortiz, Plaintiff's mother, Silvia Febus Rodríguez, Plaintiff's aunt, Carmen Montalvo-Melendez and Plaintiff's children, J.J.M.O. and D.J.M.O., (collectively referred to as "Family Plaintiffs") also bring suit claiming emotional damages for Plaintiff's civil rights violations. (See Docket No. 1 at ¶ 29.)

[2] Officer Cartagena and Officer Quirindongo were originally brought as Defendants. Claims against these defendants were voluntarily dismissed as per Plaintiffs' request. (See Docket No. 15 & 16.)

**Civil No. 11- 1428 (GAG)**                                  2

61.[3]

## I.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d

---

[3] Defendant filed a Motion to Strike Plaintiffs' Opposition alleging it was not supported by specific record citations, as mandated by Fed. R. Civ P. 56(e) and D.P.R. Civ. R. 56(e). (Docket No. 66.) Subsequently, Plaintiffs requested leave to file the amended complaint. (Docket No. 67.)

**Civil No. 11- 1428 (GAG)**                              3

17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II. Defendant's Objection to Plaintiff's Statement of Uncontested Facts

Prior to establishing the relevant factual background, the court must first rule on Defendant's motion to strike Plaintiffs' opposing statement of material facts at Docket No. 66. Defendant contends Plaintiffs' opposition is in violation of Local Rule 56(c) and 56(e) and, therefore requests the motion for summary judgment at Docket Nos. 46 and 47 be treated as unopposed.

### A. Anti-Ferreting Rule

Local Rule 56 (c), also known as the anti-ferreting rule, requires an opposing party to admit, deny or qualify the facts of the moving party, and to explain the reasons for denials or qualifications with record citations. D.P.R. CIV. 56(c). Rule 56(e) states:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts. D.P.R. CIV. 56(e).

"A party opposing a motion for summary judgment must submit a counter-statement, which 'shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation.' [D.P.R. CIV. 56(c)]." P.R. Am. Co. V. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010).

Plaintiffs' opposing statement does not cite or reference record evidence in support of its assertions as mandated by the Local Rules. In response to Defendant's motion to strike, Plaintiffs request leave to file an amended opposing statement to include references to record evidence as required by Local Rule 56(c). (Docket No. 67.)

**Civil No. 11- 1428 (GAG)**                                      4

      **B.     Discovery Violations**

Irrespective of the above, Plaintiffs' amended opposition raises yet another issue. The amended opposing statement maintains the same exact allegations as the original. However, Plaintiffs appropriately modified their opposing statement only as to the Rule 56 violations to include references to a sworn statement attached as an exhibit. (See Docket No. 67-1.) Plaintiffs presented a sworn statement signed by Plaintiff Montalvo and executed on September 9, 2013, roughly two and a half months after Defendant's motion for summary judgement and four months after the conclusion of discovery.[4] This sworn statement is the only record citation Plaintiffs cite to support their opposition. In sum, Plaintiffs' sworn statement suggests, via hearsay evidence, Plaintiff's knowledge of Defendant Sanchez's proposal to Sandell Vazquez that she alter her testimony in order to frame him for the murder of Freddie Laboy Valentin. It further reads that Freddy Laboy Velazquez, father of the deceased, told Defendant that, "to the best of his knowledge, and from the information he possessed, his son was like a brother to [Plaintiff Montalvo] and he was convinced that [Plaintiff Montalvo] was not the one who murdered his son." (Docket No. 67-2.)

Rule 26(a) of the Federal Rules of Civil Procedure dictates the mandatory disclosures parties must provide to each other during discovery. When a party fails to comply with these disclosures, Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); see Ortiz-Lopez v. Sociedad Española de Auxilio Mutuo y Beneficencia de P.R., 248 F.3d 29, 33 (1st Cir. 2001) (Rule 37 provides for a "self-executing sanction" for failure to make required evidentiary disclosures)).

Because Plaintiffs submitted Montalvo's sworn statement for the first time at this stage of the proceedings, Plaintiffs' sworn statement is in clear violation of Rule 26. For this reason, the

---

[4] Discovery in this case concluded on May 10, 2013. (See Docket No. 37.)

**Civil No. 11- 1428 (GAG)**                     5

court will not allow Plaintiffs to supply this evidence on a motion.  Plaintiffs justify not having presented the sworn statement at an earlier stage in litigation because they were unable to contact Plaintiff. (Docket No. 67.)  They state that "it was prepared and ready to be signed and filed." Id. The court cannot excuse Plaintiffs' untimely filing.  Plaintiffs should have notified the court of Montalvo's alleged disappearance.  However, despite Montalvo's alleged vanishing act, prior notice to the court was not given.  Based on the above, and pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs are not allowed to present the sworn statement at Docket No. 67-2 as evidence.[5]

Consequently, the court **GRANTS** Defendant's motion to strike Plaintiffs' opposing statement of material facts at Docket No. 66 and **DENIES** Plaintiff's leave to file an amended opposing statement of material facts at Docket No. 67.  Thus, Defendant's statement of uncontested facts at Docket No. 47 is deemed admitted.

**III.     Relevant Factual & Procedural Background**

On April 26, 2010, Freddie Laboy Valentin died after being shot with a firearm. (Docket No. 47 ¶ 3.) Defendant Sanchez is a homicide investigative agent for the Puerto Rico Police Department ("PRPD") assigned to the Criminal Investigation Bureau in Guayama, Puerto Rico. Id. ¶¶ 1-2. Defendant Sanchez was assigned to investigate Laboy Valentin's death. Id. ¶ 4. After the shooting, Defendant Sanchez interviewed Laboy Valentin's father, Freddie Laboy Velazquez. Id. ¶¶ 5-6. Laboy Velazquez informed Defendant Sanchez that Edimarie Sandel Vazquez was with Laboy Valentin at the time of the shooting. Id. ¶ 7. Defendant Sanchez conducted a preliminary interview with Sandel Vazquez. Id. ¶ 8. On May 6, 2010, Defendant formally interviewed Sandell Vazquez. Id. ¶ 9. During the interview, she gave Defendant details about Laboy Valentin's death and provided a description of the author. Id. ¶ 10. As a result of the investigation, Plaintiff Montalvo became a

---

[5] According to the Rules 801 and 802 of the Federal Rules of Evidence, Plaintiffs' sworn statement constitutes hearsay, inadmissible as evidence, therefore invaluable for summary judgment purposes as well. See of the Federal Rules of Evidence. FED. R. EVID. 801 & 802.

**Civil No. 11- 1428 (GAG)**                                       6

suspect of Laboy Valentin's murder. Id. ¶ 12.

      Prosecutor Elba Melendez from the Puerto Rico Department of Justice was assigned to the case. (Docket No. 47 ¶ 14.) During the course of the investigation, Defendant attempted to locate Plaintiff Montalvo to execute a line-up but was unable to do so. Id. ¶ 15. Following Prosecutor Melendez's instructions, Defendant prepared a photographic line-up. Id. ¶ 16. Sandell Vazquez positively identified Plaintiff Montalvo as the author of the shooting. Id. ¶ 17. As a result of the positive identification, Prosecutors Melendez and Juan Carlos Martín interviewed Sandell Vazquez. Defendant Sanchez was also present during the interview. Id. ¶19. Sandell Vazquez executed a sworn statement detailing her recollection of the events and a description of the author. Id. ¶ 20. After the interview, Prosecutor Melendez decided to formally charge Plaintiff Montalvo with first degree murder. On May 10, 2010, the charges were formally filed against Plaintiff Montalvo. An arrest warrant was issued shortly thereafter. Id. ¶¶ 21-25. The probable cause for arrest hearing was held at the Guayama Municipal Court. At the hearing, Prosecutor Melendez submitted as evidence Sandell Vazquez's sworn statement, the photographic line-up, and Defendant Sanchez's testimony. (Docket No. 47 ¶¶ 25-26.)

      On May 11, 2010, Plaintiff Montalvo was arrested. Docket No. 47 ¶ 30. Defendant Sanchez did not execute the arrest. Id. ¶ 29. Plaintiff Montalvo posted bail and on May 13, 2010 the court ordered his release. Id. ¶ 32. The arraignment hearing was held on August 4, 2010. At the hearing, Prosecutor Melendez filed a motion to dismiss under Rule 64 of the Puerto Rico Rules of Criminal Procedure, P.R. LAWS ANN., tit. 34 § App. II, R. 64 (Docket No. 47 ¶¶ 36.) The prosecution informed the court that they received new information that required verification and corroboration. Id. ¶ 37. The court next dismissed without prejudice the complaint against Plaintiff Montalvo for speedy trial violations under Rule 64(n) of the Puerto Rico Rules of Criminal Procedure. Tit. 34 § App. II, R. 64(n). Id. ¶ 42. To this date, the criminal case against Plaintiff Montalvo remains open. Id. ¶ 43.

**IV. Discussion**

      Defendant moves for summary judgment asserting that Plaintiffs failed to state valid claims

**Civil No. 11- 1428 (GAG)**               7

under the Fourth and Fourteenth amendments.  In the alternative, Defendant claims to be entitled to qualified immunity. Lastly, Defendant asserts that Family Plaintiffs lack standing to sue. (See Docket No. 47.)

  **A.**  **Section 1983 Claim**

  Plaintiff Montalvo brings claims under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth amendments. U.S. Const. amends. IV & XIV.  Section 1983 creates a remedy for those who are deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the United States.  See Rodríguez García v. Mun. of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  To succeed in a Section 1983 claim, Plaintiffs must allege the following: (1) that plaintiff was deprived of a federal right; (2) that the defendant who deprived him of that right acted under color of state law; and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 558 (1 st Cir.1989); West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

    1.  Fourteenth Amendment Due Process Claim

  The Due Process Clause protects against deprivation of life, liberty, or property without the due process of law. U.S. Const. amend. XIV.  This due process guarantee has both procedural and substantive aspects. See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008). Plaintiff Montalvo alleges violation of his due process rights under the Fourteenth Amendment but fails to specify if his claim arises under the substantive or procedural framework of the Due Process clause.

  In Albright v. Oliver, 510 U.S. 266, 274-75 (1994), the Supreme Court specifically excluded substantive due process as the basis for a § 1983 claim based on a malicious prosecution.  Similarly, the First Circuit has held that a procedural Due Process claim is not actionable unless no adequate post-deprivation remedy is available under state law.  See Perez-Ruiz v. Creso-Guillen, 25 F.3d 40, 42 (1st Cir. 1994).  Therefore, the availability of an adequate remedy for malicious prosecution under Commonwealth law, see P.R. LAWS ANN. tit. 31, § 5141 (1991), is fatal to Plaintiff's procedural due process claim.  See Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 411 (1st Cir.

**Civil No. 11- 1428 (GAG)** 8

1990). As such, the court **GRANTS** Defentdant's motion for summary judgement as to Plaintiff's Fourteenth Amendment violation claims.

### 2. Fourth Amendment Malicious Prosecution Claim

Plaintiff alleges Defendant Sanchez "willfully, intentionally and knowingly prepared witnesses and changed declarations with the only intention of framing [Plaintiff] Montalvo and falsely prosecute him," violating his Fourth Amendment rights. (Docket No. 1 ¶ 20.)

It remains unanswered "whether a malicious prosecution claim is cognizable under the Fourth Amendment and section 1983." Harrington v. City of Nashua, 610 F.3d. 24 (1st Cir. 2010) (citing Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)). However, "the First Circuit has assumed that such a claim, under the right circumstances, would be valid." Nieves, 241 F.3d at 53. See also Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999) (recognizing circuit consensus that "state actors who pursue malicious prosecutions against others may be held to have violated the Fourth Amendment, thereby risking the imposition of liability under 42 U.S.C. § 1983.").

"The elements of a common-law cause of action for malicious prosecution are: (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." Nieves, 241 F.3d at 53.

The First Circuit has established that a malicious prosecution claim under 42 U.S.C. § 1983 requires more than the elements of the common-law cause of action. Moreno-Medina v. Toledo, No. 10-1897, slip op. at 7 (1st Cir. 2012). In addition to the common-law cause of action elements, "plaintiff must 'show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.'" Moreno-Medina, No. 10-1897 (quoting Harrington, 610 F.3d at 30)). In a malicious prosecution claim, "The constitutional violation lies in the 'deprivation of liberty accompanying the prosecution' rather than in the prosecution itself." Moreno-Medina No. 10-1897, (quoting Britton, 196 F.3d at 29). Typically, the alleged deprivation takes "the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)."

**Civil No. 11- 1428 (GAG)**                                                   9

<u>Nieves</u>, 241 F.3d at 54.

  Plaintiff Montalvo claims Defendant knowingly and intentionally provided false information regarding the murder of Freddie Laboy Valentin and altered a witness' testimony in order to falsely accuse him of a crime he didn't commit. (Docket No. 1 ¶ 20.)  In accordance with <u>Nieves</u>, to adequately advance its malicious prosecution claim, Plaintiff must prove Defendant acted with malice and without probable cause.  In the instant case, Plaintiff merely asserts Defendant provided false testimony in support of the criminal charges against him but fails to offer admissible evidence supporting its contention.  Furthermore, Plaintiff Montalvo also alleges Prosecutor Melendez requested the dismissal of the charges to avoid an injustice. (Docket No. 1 ¶ 21.) These arguments constitute conclusory allegations and are unsupported by record evidence.

  "A Fourth Amendment violation may be established if a [plaintiff] can show that officers acted in reckless disregard, with a 'high degree of awareness of [the] probable falsity' of statements made in support of an arrest warrant." <u>Forest v. Pawtucket Police Dept.</u>, 377 F.3d 52, 58 (1st Cir. 2004). "Reckless disregard of the truth in the submission of a warrant application may be established where an officer 'in fact entertained serious doubts as to the truth of the allegations' or where 'circumstances evidence[d] obvious reasons to doubt the veracity of the allegations' in the application." <u>Diaz Roman v. Denis</u>, No. 08-1420, 2010 WL 3069442, at *13 (D.P.R. Aug 2, 2010) (quoting <u>United States v. Ranney</u>, 298 F.3d 74, 78 (1st Cir. 2002)).  "[W]henever the finding of probable cause is based on a search warrant that was based *solely* on false statements made in a supporting affidavit, the arrest violates the Fourth Amendment . <u>Id.</u> (emphasis provided)).

> Where the decision to file charges is within the discretion of the prosecutor, it is not sufficient for plaintiffs merely to show that the defendant gave incomplete information to the prosecutor. Plaintiff[] must show that the incomplete information caused or "compelled" the government authorities to file charges against the plaintiff. Unless the defendant is shown to have knowingly provided false information to the officials, '[t]he exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.' <u>Rivera-Marcano v. Normeat Royal Dane</u>, 998 F.2d 34, 38 (1st Cir. 1993) (citations omitted).

**Civil No. 11- 1428 (GAG)**                                   10

The record evidence for the case at bar provides detailed information as to the investigation of the case against Plaintiff Montalvo. It is uncontested that Defendant Sanchez initially contacted and interviewed Sandell Vazquez and notified the prosecution of his findings. (See Docket No. 47 ¶¶ 8-10.) Consequently, the prosecution took affirmative action and conducted their own investigation on the murder of Freddie Laboy Valentin. Id. ¶¶ 14-20. As a result of the investigation, Prosecutor Melendez then decided to formally submit charges against Plaintiff Montalvo. Id. ¶ 21. It is also an uncontested fact that Defendant's testimony was admitted as evidence in the probable cause hearing. (Docket No. 47 ¶ 26.) However, Defendant's testimony was not the only evidence provided. The record shows that the prosecution rested mostly on Sandell Vazquez's testimony. As stated above, in order to prove probable cause for arrest, Prosecutor Melendez provided Sandell Vazquez's sworn statement, the photographic line-up and Defendant Sanchez's testimony. (Docket Nos. 47 ¶¶ 25-26.)

Defendant contends there is no evidence that demonstrates Defendant Sanchez's awareness of the falsity of his statements in furtherance of the prosecution against Plaintiff Montalvo or that he changed the witnesses' testimony. Nowhere does the record provide support for Plaintiffs' contentions. Despite the lack of evidence, Plaintiffs further argue that "it is obvious that Defendant's actions were malicious and willful, since he has information regarding Plaintiff's innocence." (Docket No. 60 at 14.) Once again, Plaintiffs set forth conclusory allegations, failing to provide evidence in support thereof. Plaintiffs fail to meet the elements of a malicious prosecution claim.

In light of the above, the court **GRANTS** Defendant's motion for summary judgement at Docket No. 46 dismissing Plaintiffs' Fourth amendment violation claims.

### B.     Supplemental State Law Claims

Family Plaintiffs bring suit under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141 & 5142, seeking compensatory damages for their own injuries. (Docket No. 1 ¶¶ 29-30.) The court will retain Plaintiffs' supplemental law claims at the summary judgment stage. Defendant has moved for summary judgment as to these claims as well. (Docket No. 46.) For the same reasons the court granted summary judgment of Plaintiff's § 1983 claims, the

**Civil No. 11- 1428 (GAG)**                    11

court finds there are no genuine issues of material fact as to Defendant's fault or negligence under Articles 1802 and 1803 Puerto Rico's Civil Code that warrant denial of summary judgment.

In light of the above, the court **GRANTS** the Defendants' motion for summary judgment and dismisses all Plaintiff's supplemental state-law claims with prejudice.

### IV.    Conclusion

For the foregoing reasons, the court **GRANTS** Defendant's motion for summary judgment at Docket No. 46.

**SO ORDERED**

In San Juan, Puerto Rico this 16th day of December, 2013.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge